We would love to hear from the appellant. Thank you, Your Honors. My name is Richard Burke and I represent the Cowen plaintiffs in this consolidated action. The Cowen plaintiffs were the people who were basically picked up on the side of the road and taken by Air Methods and then sent $50,000-$60,000 bills. Could you somehow get the mic closer to you? I'm having trouble hearing you. Okay, how's that? Better? Or speak up. Maybe I'll just stand closer. Or speak up. Okay, I will speak up then. We have 15 minutes and the Cowen plaintiff's decision is completely the opposite of my co-plaintiff's and therefore I want to be very scrupulous that I do not invade his time. While being scrupulous, could you scrupulously tell me, there seem to be two categories of plaintiffs. One has been signed a contract that authorizes their being airlifted and the other one, one of the categories of plaintiffs is proceeding on an implied, totally implied contract that there's no written agreement. Is your split along those lines or not? I can't read that. Not completely. Some have contracts and some don't. Mine do not. All of yours do not have contracts. That's correct. And this is the big distinction because my non-contract clients are asking that ADA preemption be applied to the defendant. Because in the absence of a contract, the defendant has no legal entitlement to payment. This is EGLE Med, okay? The plain meaning says no state may impose an obligation to pay. In EGLE Med, as the court may remember, the district court not only declared that the preemption applied to the state of Wyoming's rate schedules for airing the workers' compensation, but also issued an injunction ordering the state to pay the ambulance companies. In front of this court, plain meaning rule was applied. It said preemption is clear. They can't do it. And reversed the injunction because the federal law creates no obligation to pay. Now, there was a side issue there that it was asked that the federal court believe it couldn't be for a state, separate sovereign, to pay anything. And that isn't really the issue here as far as I'm concerned. Because what's happening is that the air ambulance companies wind both ways. This is EGLE Med, too. This is the case where the injured worker in EGLE Med, who's now been balanced billed, is being taken to the state court in order to pay a judgment for $60,000. Based on what? If preemption says the state may not impose obligations relating to the price, then the state may not impose through its common law an obligation to pay. The problem is that the district court in this case didn't rule on any of the declaratory judgment requests but save one. It ruled that there was no contract. Having found that there was no contract, the remedy is a dismissal of my case. The remedy is to declare that there was no contract and then what is the effect of preemption on the defendant? So my case is relatively simple, at least in my mind. Perhaps everything is in my mind. But in any event, that's the essence of the Cowan case here. Now, the confusion I think that the district court made arose from the first meeting that the parties had with Judge Jackson. At that meeting, the judge divided the two groups of plaintiffs, just like you have, and said, with respect to my claim, he said it is inconceivable that this court or any court would deny the air ambulance company's payment for their services. Well, we then engaged, he sends us back, says give me a theory, give me a path to get there. And then by virtue of 28 U.S.C. 2202, which is further remedy, we gave him a path. He didn't like the path. He didn't like mine. The path that you're talking about, I assume as you suggested, federal common law? Federal common law. And he did reject that theory and that was the basis, my understanding, for the court's decision. That's why it's wrong. But you don't reassert that on appeal. You seem to have abandoned the whole federal common law. It's unnecessary. Why? Well, it's unnecessary. That was the whole point. No, the whole point, if you look at the jurisdictional paragraph of the complaint, we assert federal subject matter jurisdiction on the preemption. We say that the Airline Deregulation Act preempts the defendants from pursuing a collection action or any collection action in the absence of a non-preemptive legal right to payment. That's it. The judge finds no contract, but rather than grant the declaration that there's no contract, and because there's no contract, the ADA preemption applies to the defendant. Preemption applies equally to all sides. It's not a party-specific preemption. It doesn't say only the patients or passengers are preempted. It says no state law. The defendants have never asserted any legal entitlement to the money that's not preempted. Excuse me. Counsel, is there a problem back here? Your Honor, we're going to switch off. Excuse me. I'm sorry. But I do need to give him this chance. Yes, you do. Thank you, Your Honor. Ed White for the Scarlet Plaintiffs. Defendants have written contracts with many of the plaintiffs. In those written contracts... Now, just a second. Now, this gentleman's clients do not have contracts. Correct. Yours do or do not have? Some of ours do, some do not. There's 34. So how do the two putative classes differ, then? Well, Your Honor, of course we never got there because of the court during the motion to dismiss. But the defendants, there's no necessity to do what the court did, which is to divide the implied contract clients from the express contract clients. In fact, the court didn't address that at all. Despite what the complaint says, the court made no reference to the express contracts, to the fact that some of the patients, about three-quarters of transports by air ambulance are from one hospital to another. Folks are conscious or their loved ones are conscious. But defendants don't give price disclosures in their written agreements. They don't give it orally. They don't put it on their website. They don't attempt to negotiate contracts with insurance providers. They have chosen a contract mechanism which only allows the court to provide us a price. And that's what, for example... I didn't hear the last part. Only allows the court to provide the price? Yes, Your Honor. Instead of choosing a... Defendants, instead of choosing a course where they set the price, they have chosen a course where the only... If there's law, it has to be the court that sets the price. Otherwise, the counterclaims arguments make sense. We do not think that is the case. I don't think the USDOJ thinks that's the case. I'll let them speak on that. The contracts chosen by defendants are... What contracts? Your argument was... Your complaint was that these were implied in law contracts. And now you seem to be changing your theory too. I'm very confused. You're talking about contracts, but your complaint says they did not enter into either a written or oral agreement. They didn't enter into an enforceable oral or written agreement because there was no price. It's not to say... Why are we talking about contracts now? There's a written document. All parties... Your argument was implied in law contracts, and you seem to be... The court construed it as implied in law. We said implied. When you lack a contract term price, there is some relationship between parties. That's what we're saying. And defendants are entitled to be paid, but they do not have unreviewable, unfettered discretion to set a price at whatever they want. The agreement they undertook, having not put the price in the written contracts, having not told the plaintiffs about it, having not negotiated with the insurers, having not in any way undertaken to let folks know what their price is, then the court has to set that price. Otherwise, it's lawlessness. Where did you assert in your complaint that there was either an express contract or some kind of implied in fact contract? We assert, Your Honor, it's in the record. Plaintiff McCloskey had written an agreement with... Where is it in the complaint? In the appendix, it's at 371. Larson is at 371. Is that the complaint? Yes, Your Honor. Okay, 371. What do you say there? What are you talking about there? We say that... And there's a saying for many, many of the plaintiffs. We say that the plaintiffs signed a document with defendants. That document lacked a price, and therefore, on its face, it was unenforceable. However, there is a document signed. It has some import. We also say, for example, with respect to one of our clients that Wallace... Are you talking about the consent forms? Well, there are consent to transport forms that have the title. In fact, they were included as exhibits to the, I think, Exhibit 21 and 29 were the actual form agreement that they have the client sign. But there were also many of our clients that were conscious, and Wallace, for example, was one who had a broken bone, was conscious but couldn't sign. And again, defendants should... Where did you suggest that there was... Are you saying that maybe there was an implied-in-fact contract there? Yes, Your Honor. And where did you suggest that in your complaint? Well, we didn't say... We did not say implied-in-law or implied-in-fact. That's a construct the district court put on it. The cases, if you look at the... The Wolins case does not put that construct on it. The Ginsberg case does not put that construct on it. It simply talks about contracts. And the contract here undertaken by defendants, what the case law says, is that the defendants have taken this burden on themselves of a contract without a price and cannot now be heard to complain that the court sets the price. When the district court interpreted your argument as raising implied-in-law contract and said the Wolins exception didn't apply, did you ask for a re-hearing and say, no, no, no, we weren't talking about an implied-in-law contract? No, Your Honor, we did not. But we did... But now you want us to say that. Well, in this context, the context of a motion to dismiss is to no review. The complaint clearly had these allegations in it. And after saying that those constructs matter, the court pursued to ignore them and dismiss the case. We'll reserve the balance of our time. All right. Thank you. Good morning, Your Honors. I'm Louis Yellen from the Department of Justice. I'm here today on behalf of the United States. Hallelujah. I'm glad you're here. Let me give you a couple of things. So the Airline Deregulation Act is now in force. And I want to fly from Denver to Salt Lake. And I go to a carrier and say, I want to go to Denver to Salt Lake. How much is it going to cost me? They say, oh, no, we don't do cost here. We'll bill you after we fly you. And here's your written contract. And you sign a blank credit card. And then we'll fill in the blank because we don't have to publish fares. And the consumers of America would say, are you crazy? That's nuts. And there would be a major revolution, right? Because nobody's going to fly from Washington to Denver without knowing what it's going to cost them. Yet that is precisely the case before us, that you have an injured person hiking and the women who cheat, they get injured. And a friend calls and says, send the helicopter. And they said, we're sending a helicopter. How much is that going to cost me? Oh, we don't tell you how much it's going to cost you. We'll tell you later how much it's going to cost you. That's precisely this case, right? It is, Your Honor. And if I may, I'd like very briefly to provide four points. So where do we go from there, then? What does the U.S. government recommend? I think, if I may, very briefly give the Court four points which set out the analytic framework for considering a case like this. The first point is that there are two established principles for considering whether state law is permissibly applied to a carrier whose transportation— Well, but I thought the Airline Deregulation Act preempted— With respect, Your Honor, if I may, let me get out these points that will respond directly to Your Honor's question. So the two points are, first, under Wollins, we know that state law may apply to effectuate the voluntary undertakings of the parties through an agreement, either an express or an implied-in-fact contract. We know under Ginsburg that state law may apply if parties could have contracted around the state law provision that would serve as the background law to apply in the absence of an agreement. A missing price term in an implied-in-fact contract would be an example of this. The second point, this case is— The whole thing after the Reagan revolution, the air flight traffic control went on strike, and then we all remember the historical events, but ultimately it led to the Airline Deregulation Act. And the Airline Deregulation Act says that the states may not get involved in pricing, that that is a matter exclusively for the federal government. No, Your Honor, that's incorrect, and it's very important. The Deregulation Act did not make pricing a matter for the federal government. It made pricing a matter for voluntary contracts between private parties. Under the Act. Under—but to be very clear, the Act does not regulate pricing. That was the entire point of the statute, to take the federal government, which previously did regulate pricing, out of the picture. So is it your argument now that the states have the authority to— With great respect, Your Honor, if I may finish, I'll try to be very brief. The following three points— Please proceed. Make your points, then, so I can get to a question. Yes, Your Honor. So I'll— So the second point is that, unlike Owens and Ginsburg, in this case, we do not have, at least as for some plaintiffs, we do not have actual contracts. And so the question is what to do about that. There are two theories that are coherent with the two principles I previously articulated. The Cowan plaintiffs identify one. That is, what's good for the goose is good for the gander. Everything is deregulated. There is no law that applies. And too bad air transport, air ambulances, you don't get to charge for your services. Then there's the government's theory. We think the government's theory is preferable because it's consistent with a third governing principle concerning the context in which state law is not preempted. This is the Dance City towing principle. That principle says the preemption provision of the ADA should not be construed such that there is no law to apply. Instead, if there would be no law to apply, there would be no ability for parties on either side either to charge for their services or to contest those charges. In Dance City, the context was a towing company that claimed that its sale of a car was the way in which it received compensation for the towing service. And it said, not implausibly, that that relates to a price because that's the price it received, the compensation it received for its services. The Supreme Court in Dance City said that cannot be the case because you rely on regulatory law, state regulatory law, for disposing of the car and getting your compensation. But if you rely on that law, the person whose car was towed also has to be able to rely on the same body of law. Similarly here, in the context in which plaintiffs have not made an actual agreement, either express or implied in fact, if an air ambulance seeks to compel compensation relying on state contract principles, that's because there is no other law to apply. The only thing left standing is state law. Well, their theory was federal common law. Your Honor, that was... That got rejected and now it doesn't seem to be pursued. Whether or not it's been pursued, that's been expressly rejected in the Rollins case, so it would not... Are we stuck with that theory? With which theory, Your Honor? Are we kind of stuck with the theory that they pursued? Your Honors, with respect, I'm... You're not familiar. It's not your... I understand. Well, it's the government's role here. Yes, I know. Yes, Your Honor. Okay. I hear you're just giving us a way to maybe get there, and I'm wondering if we can, I guess. Go ahead. So under Dan C. Towing, the court's role is to, first of all, evaluate the district court's determination as to whether or not there were implied in fact... Sorry, excuse me, express, implied in fact, or implied in law contracts alleged. As for the express and implied in fact contracts, state law may provide terms that are missing, if there are missing terms, because, number one, state contract law is used to effectuate the decisions, the voluntary undertakings of the party. And number two, state contract law applies if the parties could have contracted around them. And then, number three, if the court determines that there were some plaintiffs that had no actual contracts, then the state law may apply to govern the transaction between the parties, because otherwise there would be no law to apply. So the position of the federal government then is what? The position of the federal government is in a context in which there is no express or implied in fact agreement, and there is no other law to apply. State law is not preemptive to the extent that it governs the transaction of the parties and provides a context for determining what the appropriate cost and charges are. It provides a forum. It provides a forum, but also... So the state court intervention in the process is not preempted for purposes of determining, either on a quantum merit basis or some other basis, the compensation to be paid? That's correct, Your Honor. And that's your position? I would say not state court, but state common law. State common law principles could be applied in a federal district court, for example, Your Honor. And that would be because there is no other law to apply. I thought if you had implied in law, they were preempted. As a general matter, Your Honor, it depends on what the starting framework is. If there is an actual agreement, the parties may not rely on state equitable contract principles to constrain the agreement. So in Ginsberg, there was an actual agreement. There was a ticket purchase, which is a contract between a passenger and a... And then you're just in pure contract agreement between parties. Exactly. The air ambulance cases present an unusual situation where a transaction is undertaken, transportation services are undertaken without, at least in circumstance of some plaintiffs, without the possibility of forming a contract. A person who's unconscious, a person who has a medical provider make decisions on his or her part, has no ability to undertake a contract. And so in this limited, unusual circumstance, the question is, what law must there be to apply? Because there has to be some law to apply. Otherwise, there would be no market. It would collapse. There would be no availability of any air ambulance services. So now may I ask some questions? Yes, Your Honor. Okay, now, all right. So in some of these cases, as the gentleman who argued first told us, his clients have written contracts, but they do not provide for the amount to be paid. Now, is it the position of the United States government that in that case, the parties may resort to the state courts to determine on a reasonable basis the compensation due and owing? Yes, Your Honor. If the court determines that there were actual contracts between parties, and if there is a missing price term, the court would apply state law. The state court would apply state law. Well, no, Your Honor. A federal court has authority to, as long as there's jurisdiction, to undertake. And so is it concurrent jurisdiction? I just want to get these real clear. So are you saying that both the federal courts and the state courts have concurrent jurisdiction? Because they're resorting, the argument here is that the airline or that the carriers are resorting to state law collection principles without also succumbing to state law court-setting principles. I understand the dispute slightly differently, Your Honor. I don't understand the dispute as addressing the forum, that is, federal court or state court. I understand the dispute as involving what law would apply in this particular case brought in federal district court. And if the court accepts the government's argument as for any actual contracts expressed or implied in fact, the court would apply the agreement of the parties. And to the extent there was a missing term, the court would apply whatever governing state law is. In this case, I assume it would be Colorado. Next case. The cases where there are no contracts, is your position the same? The position is... The court, the federal courts may resort to state law for the purpose of determining on quantum merit or what other principles it wishes to apply, the amount due and the mechanism for collection thereof. Yes, Your Honor. It's the same in that sense. That is, the sense in which courts may properly resort to state law as the only law to apply. I'm almost finished. Yes, Your Honor. Has the position of the government changed during the course of this litigation? No, Your Honor. This is the argument we presented in our brief. It's consistent with arguments we presented in other cases, including... So if you ran the zoo, as I often say, what would you have us do? Would you, say, reverse the district court and apply these principles that I've enunciated to you today? Is that what you would do? Your Honor, this may not be a fully satisfactory answer, and I apologize if it's not. The answer is it depends. Oh my goodness. It depends on what? The reason it depends, Your Honor, is because there's an actual question about the nature of the contracts in this case. If all of the case... If all of the... The court would have to determine whether the district court erred in saying that all of the contracts here were implied in law. To the extent that there are actual contracts, I think that the district court did err because it concluded that there were no actual contracts. To the extent that there were implied in law contracts, this court would reverse and say, no, under Dan City, the district court has to consider what law would there be to apply if there is no federal law, and if the defendants, the ambulances, have to rely on state law principles, may the plaintiffs rely on state law principles equally. So the court has to undertake some analysis that the government has. And if they have to rely on state law principles, what effect then on preemption? There would not be preemption because there would be no federal law to apply in this context, and in this unusual circumstance where there was a transaction undertaken, transportation given under exigent circumstances, the only law to apply would be state law. And as the court in Dan City said, we can't attribute to Congress the intent to completely eliminate any applicable law. But in either event, I have not heard you articulate any event in which the carriers could unilaterally set the rate. That is correct, Your Honor. Your Honor articulated the government's position. All right. Thank you. Thank you, Your Honor. Thank you. May it please the Court, Christina Gomez here on behalf of Air Methods and Rocky Mountain Holdings, and David King also is at counsel table with me today. So although, as the court has gathered here, the two sets of plaintiff's legal theories differ, all of them fall within the preemptive scope of the ADA, just like the plaintiff's claims in the Schneeberger case the court decided last year. Counsel, why are the carriers so insistent on going into Never Never Land, where you don't set rates, but apparently arrogate unto yourselves the power to charge whatever you bloody well please? The carriers have consistently taken the position here in front of the DOT that what we charge and what we are allowed to charge is our customary rate. That does not allow us to charge anything we want to any individual passenger. But do you post your customary rates? There are in some instances we do. Now, let me get to that. To the extent that there is a question of whether we need to provide either to patients as they're coming into the helicopters or on our websites or whatever, what our rates are, that is a question that is before the DOT right now. I mean, that's part of the FAA Reauthorization Act was the creation of this committee that includes the states, insurance, I mean, all of the parties that have some interest in this here as a body to work with the DOT, have the DOT review their recommendations and decide what to do in terms of regulations, guidance, or whatever. One of those questions is disclosure of rates. So that is a question the DOT as like a single regulatory agency is going to decide on a national basis. Do you agree that in the absence of posting those rates that some form of quantum merit principle has to apply in order to set the rate in any given case? In order to entitle us to receive payment for our services. Now, I mean, going back to how preemption applies, and this goes back to the very first argument today about EagleMed and how it relates to this case here. EagleMed said the ADA did not preempt the obligation to pay, the state obligation to pay. It preempted only the price. So we're arguing the same thing applies here. The ADA does not preempt the obligation under quantum merit. I mean, we would say it's under these implied contract or quantum merit scenarios. But state law cannot determine what that price is. So you would disagree with the government? Yes. We say that the price, and this goes back to your first question, Judge Lister, excuse me. What we charge is our customary rate. It's not the same kind of market as in you go into a Delta Airlines counter and you say I'm going to pay $200 for a flight to Denver or whatever. But there are market forces in play. The PHI case, which we've cited in our briefs, addressed that issue. There are market forces in terms of there's obviously competitors in this industry. There's issues with carriers getting on preferred lists where hospitals will use them, third parties will call them. And as I indicated, if in one circumstance we charge, and I think this came up in the Schneeberger argument, if we picked up Bill Gates and we said you've got deep pockets, we're going to charge you a billion dollars here, I think that would be an issue. And we've conceded that in front of the DOT. But let me posit this more likely scenario. My buddy and I are out hiking in the Wimanoochee. One of us gets hurt. The other one calls for help to the sheriff's department. We don't then say, shall y'all take Delta Air Ambulance or American Air Ambulance and the rates, or you get a very special today on United, let's take that one. Instead, what they do is call one of you and say, go get them, right? That's right. They call one of us. I mean, there's not like multiple. So the purpose of the Airline Deregulation Act, which was to create competition and reduce prices, can't possibly be met under that scenario. Okay. I understand that the market is different. But Congress, in the FAA Reauthorization Act, some of these issues came before Congress. It could have taken air ambulances out of the scope of the FAA. It did not. It basically, and actually this was addressed recently in the Fourth Circuit case. This was the chief in case that the Scarlet plaintiffs cited in their reply brief. It said it left preemption intact. It kept the regulatory authority firmly within the federal government. And it said that that act did three things. It gave the DOT power to collect more data. This is all looking at issues within the air ambulance industry, part of what the act did. It allowed the stakeholders, including the states, to be part of the policymaking process, part of that committee that's going to give some recommendations to the DOT on how to address these issues. And it gave the DOT authority to regulate the air ambulances directly to ensure transparency and costs and provide any other consumer protections, going back to whether or not you should provide your fee schedules on your websites or whatever. So what are you saying? I mean, you're saying that, well, everybody's looking at this. Committees are being formed, and it's happening. What are these plaintiffs supposed to do? I mean, they have claims now. They're not going to wait for the committee to do it. What the Schneider plaintiffs did when they lost in front of this court is they filed an action that's pending in front of the Department of Transportation. So that's their relief? That is the relief that they have, and that's what Congress affirmed in the FAA Reauthorization Act. We have deregulation. Yes, it may be an imperfect market, but we're not going to pull air ambulances out of the scope of the ADA. What we're going to do instead is let the DOT give it a little bit more direction, make it report back to a congressional committee in terms of what they're doing to address this issue. But, yes, these plaintiffs could go there if they want to. Can you address the Dan's polling case? Yes. If I'm understanding correctly, the concept is that if there are no contracts, then ultimately you must rely upon state equitable principles under state law. Right. You're going to be relying on the same principles that you're now saying for payment that they can't rely on now. It's different. How is it different, and why doesn't the Dan city control? Well, in the Dan city case, for instance, I believe counsel for the Department of Justice said the issue with preemption was the price. It was actually broader than that. It was services, and the entire entitlement that the towing company had to dispose of this vehicle that had been abandoned was under the state act. Without the state act, it wasn't entitled to get rid of that car and take the money from it. The plaintiff in that case was saying in the course of doing that, the state may have authorized you to do it, but you had to give me notice. When you knew that I wanted my car back, you had to go through this process or whatever. So, I mean, that was all part of the same regulatory framework. So getting rid of it, it did leave a void in that case. What we're saying here is the same thing that happened in the Eagle Med case. We're not saying the entire state law is preemptive. We're not saying that this involves services here. It's just as to the price. The state law, as I indicated at the beginning of my argument, it can impose the obligation to pay. What it cannot do, what those state notions of fairness and reasonableness cannot do, is impose a price upon the parties. I mean, that comes from Wolins. That comes from Ginsburg. How will you ultimately get a price, then? How will that happen? How will you impose a reasonable price? The market, okay? So it will be whatever you say. Well, I'm going back to what I said earlier. It's not a perfect market here, but there are market forces in play that is part of what we use to set our standard prices. But it would be unilaterally determined by you, then. No court will determine a reasonable price. That is true, but if there is an issue there, the Department of Transportation can come in and say this is not, you know, that, I mean, it does have that regulatory authority to say in a particular case. They haven't been very active about that so far, have they? They have not. But there are complaints in front of them right now, and that's, I submit, where parties can go. The other issue here, though, is we say if there are express contracts, okay, and the Cowan plaintiffs have, I think actually both the Cowan plaintiffs and the Scarlet plaintiffs have said to the extent that there were any express agreements, they're disclaiming those and saying we're not bound by those. What you say is interesting, but the fact is that you're going into state court to collect these fees that you've set against the plaintiffs, right? That's the allegation. Right, not against these particular plaintiffs, but generally we're saying we do still have the right to pay. But it's consistent because we're still saying state principles of quantum merit give us the right to recover, but they cannot impose the price. But do they give you the right to access to the state courts for that purpose? Yes. So then you're really between a rock and a hard place because you agree with the government that the state court is the proper vehicle for collection, but you deny the state court the right to set the amount. The main point here is that it cannot be injecting state reasonableness principles into the price. I mean, that comes from Lowlands, too. That comes from Ginsburg. And the notion that we can contract around it, I mean, first of all, Ginsburg didn't just say if you can contract around it, then you're good. The heart of what it said was if all you're doing is enforcing the reasonable expectations of the parties, like their agreements, then you're okay. Wait a minute. If you're using state policies... Not so quick. The state courts normally would not have jurisdiction to go around enforcing judgments unless they're done under the Uniform Enforcement of Judgments Act or under some other principle. And they don't give a party unilateral access for purposes of collecting a judgment that the party declares, correct? Correct. So what judgment is the state court enforcing in these collection actions? It's not a judgment. It goes back. It's the quantum merit. We provide a service... Well, but quantum merit, it reaches a judgment. Right, but I mean, that's the legal framework for why we are entitled to recover payment. What I'm saying is the state court or a federal court cannot use state notions of reasonableness to determine what that price is. And all you're doing, just to perhaps get into this a little bit more deeply, all you're really doing is saying we send them a bill. They're not paying the bill. We collect the bill. You're not talking about enforcing a judgment. That's right. That's right. I'm not a judgment at that point. Going back to another earlier point. I'm sorry, but it doesn't work that way. I mean, courts enforce judgments. They don't perform bill collection services. It just doesn't work that way. If you go into a small court claim and you insist that I owe you X, and the state court claim says, yep, you submitted a bill and Sarah owes X, then I've got to pay X on the basis of the district court's judgment. The court has entered a judgment. And what you're doing is asking the court to enforce a nonjudgment, but merely, as I said, be a bill collector. We're saying we provided a service, whether you want to call it quantum merit, a contract implied in law, whatever. We provided a service. We are entitled to payment. Here's what the payment is. Here's what we charged here. This is our customary rate. And you can't use state notions of reasonableness to change that and say, no, you have to charge something different. Now, if I may restate what you just said. You said the United States district courts have jurisdiction. The state courts do not. So what you're saying is that you have the right to come into the United States district court and say, we submitted a bill to Judge Briscoe, who was out hiking the Wabanuchi. And here's her bill was 40,000. Some of these bills are $40,000, 45,000, numbers like that, right? Right. So here's a bill for $40,000. Please collect it. And the court is going to say, are you filing a plaintiff's fee? Are you declaring a, are you starting collection action? We don't collect bills. We enforce judgments. And are you asking the court to just issue this judgment? I can say here, this precise question is not before this court. It's not presented in this case. It's not before any court right now. But what we are saying is, is we can use a claim like quantum marijuana, as I said, implied in law. All we're saying is the court cannot overrule our price on a state law notions of reasonableness. That's preempted under the ADA. And going back to the earlier points about the express contract. Maybe we've got to get the government back up here and ask them about that. What's going to happen in any case, if you say there is a path to where we can use state law notions of reasonableness to set the price, then any time we have an agreement, even if we give the fee schedule, they agree to it at the point. They're going to say based on the same allegations in the complaint here, we were under duress. We're not bound by that. So here what we're going to do is force you into court every single time that you want to try to enforce a bill. And we're going to have the state law determine what you're allowed to charge. That's not the way the ADA works. Thank you, Your Honors. Thank you. Thank you, Your Honor. Ed White again. The Wolins case said that market efficiency requires effective means to enforce private agreements. The stability and efficiency of the market depend fundamentally on the enforcement of agreements freely made based on the needs of parties perceived by the contracting parties at the time. When you think about that statement in the context of the Dan's City case, which says not only would the preemption argument urged by the defendants leave the vehicle owners without any recourse for damages, it would eliminate the sole authority on which they claim their right to reimbursement. And it said this, no such design can be attributed to a rational Congress. The defendant's argument would bring this into a neverland where they set their arbitrary price. They never disclose it. They choose not to disclose it. They choose not to negotiate with air carriers. And they then impose it after the fact. And that is not the law under the ADA, and that is not required by preemption. And I'll yield the balance of my time to Mike. Thank you. Thank you, Ed. To your question earlier, Judge Lawrence, we allege subject matter jurisdiction to determine the scope of ADA preemption. We asked for many, many declarations, some of which asked for the application of federal common law. And I think you can see this conundrum of requesting some perhaps unusual solutions. Is it a perfect solution? No. Is it even a valid solution? Maybe not. The government offered, the United States offered another alternative. However, that doesn't relieve the district court of its responsibilities to resolve an actual controversy before it under 28201. That's why they created 28202 after a declaration of the respective rights of the parties. For instance, that the defendant's common law cause of action cannot be imposed on the patients. To argue that this price is customary is a bit ridiculous. It wasn't my custom. It wasn't anybody's custom. They set the price. They set a price, by the way, which is what makes this a 2201 case crushingly high. The median income in the United States is only $65,000 a year. Almost no one can pay this. So what happens is you get a medical bill for $60,000. You're going to be refinancing your home with that there? No. What happens to the families that this occurs to? They must force themselves into an agreement to pay less or over time of an amount of money that no law says they owe. This argument that somehow Eagle Med created a right to payment is completely contrary to its holding. This court reversed the injunction to demand payment. Now, we are at the point now, frankly, I think, where all of these cases, and there isn't a week that goes by somewhere in the United States there isn't a newspaper article about air ambulance fees. They're crushing the patients. That's an actual controversy. Well, in fairness, I mean, we don't know their cost. It may not be crushing in the context of the air ambulance carrier's costs. Well, Your Honor, if I might add, and I am out of time. Go ahead. Is that okay? Yes. Thank you. Thank you for asking. The air ambulance companies submitted, were given an assignment of benefits of insurance coverage, and they were paid some money. They were paid the reasonable amount. They have full authority to contest that under these assignments. Complete authority. And that contesting would not have been preempted because it's a first-party contract, the insurance policy to pay a reasonable amount. The patients cannot litigate that issue because they don't know the cost. They cannot defend the reasonableness of that price. Now, if they wanted to go that route, which we gave them, they could have chosen it, but they didn't. Rather, they took the easy route. And the easy route is to present a family with an enormous amount of money that they owe, okay, and then try to look at their tax returns and see whether or not they can pay and how much. Well, there goes the retirement account. Okay, so, yeah, this is an actual controversy, and the district court never entered declaratory judgment of what was clearly an actual controversy between the parties. Thank you.  Thank you all for your arguments this morning. The case is submitted.